# Exhibit 6

2003 WL 21464816
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

PEOPLE of the State of
Michigan, Plaintiff-Appellee,
v.
Linda-Ann HELDT, Defendant-Appellant.

No. 236842.
|
June 24, 2003.

Before: TALBOT, PJ, and NEFF and KELLY, JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** Defendant appeals as of right her jury trial conviction of resisting and obstructing a police officer, M.C.L. § 750.479. The trial court sentenced defendant to pay a $1,000 fine, providing that defendant would serve forty-five days in Oakland County Jail if she failed to pay within thirty days. The trial court also ordered defendant to pay a crime victims rights fee of $60. We affirm but remand for correction of the sentence.

I. Basic Facts

One afternoon in March 1999, Deputy Eugene Carter was working alone on traffic enforcement in Rochester Hills. He drove a marked patrol vehicle equipped with flashing lights. He wore a uniform, badge, hat, and gun belt. At approximately 3:45 p.m., he saw defendant's vehicle make a right turn on a red light at a location and time when such a turn was forbidden. He got behind the vehicle activating approximately eleven lights to effectuate a traffic stop. Defendant pulled over in a store parking lot where there was a lot of pedestrian and vehicle traffic.

Deputy Carter exited his vehicle and approached defendant's vehicle stating: "[H]ello, may I see your driver's license, registration and proof of insurance." Defendant would not roll down her window, but turned on a tape recorder. Deputy Carter asked her to roll the window down because he could not hear her. Defendant rolled it down approximately one inch. When Deputy Carter again asked defendant for the documents, she stated that she did not have to talk to him and asked to see his identification. He understood her to mean his ID badge. After he checked his vehicle for his ID badge, he returned and told her that he did not have it in his possession. He again asked for her driver's license, registration, and proof of insurance. Defendant said that it was her property and she did not have to give it to him. At one point, she placed the driver's license up against the windshield. However, Deputy Carter could not see the information through the window. In response to Deputy Carter's continued requests for defendant's identification, defendant put the driver's license through the slit in the window. When Deputy Carter reached for it, she pulled it back stating that it was her property and he could not have it. During this stop, defendant spoke to several people on a cell phone.

Deputy Carter called Sergeant White who arrived after approximately fifteen minutes. He was in full uniform and drove a marked vehicle. Sergeant White asked defendant if there was a problem and requested her identification. Defendant placed a "no trespassing" sign on the driver-side window. At approximately 4:25 p.m., another officer arrived to videotape the incident. A dispatcher called and advised Sergeant White that she was speaking to defendant who called to inquire whether the officers were in fact officers. The dispatcher informed defendant that they were. Eventually, Sergeant White stated that he would break the window if defendant did not open the door and provide the requested documents. Defendant then turned over the documents stating that she was doing so under duress and that she felt threatened. The registration did not have the VIN of the vehicle that she was driving and the proof of insurance was expired. After Sergeant White ordered defendant to exit her vehicle, she stated that she was afraid for her life because the officers had guns and she did not. After defendant ultimately exited the vehicle, Deputy Clark explained the problems with her registration. Deputy Carter issued tickets for disobeying a traffic control device, no proof of insurance, and invalid registration. Defendant was released at approximately 5:00 p.m. Ultimately, she was charged and convicted of resisting and obstructing, M.C.L. § 750.479.

II. Applicable Law

*2 Defendant was charged with "resisting and obstructing Deputy E. Carter and/or Sergeant R. White," pursuant to M.C.L. § 750.479 which, at the time of the alleged offense and defendant's trial, provided:

> Any person who shall knowingly and willfully obstruct, resist or oppose any sheriff ... or person duly authorized, in service, or attempting to serve or execute any process, rule or order made or issued by lawful authority, ... shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than two [2] years, or by a fine of not more than one thousand [1,000] dollars.

In *People v. Vasquez,* 465 Mich. 83; 631 NW2d 711 (2001),[1] our Supreme Court construed this statute noting to begin with that the statute generally, "proscribes conduct that 'obstruct[s]' a police officer while the officer is attempting to 'keep the peace.' " *Id.* at 88 (Markman, J.). The Court construed "obstruct" to mean "both violent and nonviolent physical interference." *Id.* at 90-91. The Court determined that the defendant's conduct of lying to an officer about his name and age "did not physically interfere with or threaten to physically interfere with the officer." *Id.* at 92. The Court decided:

> Because one may threaten to or actually physically interfere with a police officer without threatening to or actually hurting a police officer, we believe that one may physically "obstruct" an officer without necessarily posing a threat to the officer's safety. For example, one may "obstruct" an officer with the intent of making it less accessible to the officer. This may pose no real threat to the officer's safety, but it may nevertheless "obstruct" because of the physical barrier interposed to the officer's performance of his duties. Therefore, both physical interference that poses a threat to the safety of police officers ("assault, beat, or wound") *and* physical interference that does not necessarily, but nevertheless may, pose a threat to the safety of police officers ("obstruct, resist, [or] oppose") are proscribed. [*Id.* at 94.]

The Court noted that this opinion was consistent with its earlier opinion in *Philabaun,* wherein the defendant's refusal to comply with a search warrant for a blood sample constituted an obstruction even though it was passive because the officers were "placed in a situation in which, in order to get a sample of the defendant's blood, they would have had to physically constrain him and take his blood against his will. When the defendant refused to cooperate, the next likely sequence of events very well could have been the possible injury of a police officer attempting to enforce the search warrant." *Id.* at 97. Also applicable to this case, is the Court's determination that that statute requires actual obstruction rather than attempted obstruction. *Id.* at 99 n 10.

III. Directed Verdict/New Trial

Defendant first argues that the trial court erred in denying her motion for directed verdict or new trial. We disagree.

*3 When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *People v. Aldrich,* 246 Mich.App 101, 122; 631 NW2d 67 (2001). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v. Jolly,* 442 Mich. 458, 466; 502 NW2d 177 (1993). It is not permissible for this Court to determine the credibility of witnesses in reviewing a trial court's ruling on a motion for directed verdict. *People v. Schultz,* 246 Mich.App 695, 702; 635 NW2d 491 (2001). Rather, questions regarding witness credibility are left to the trier of fact. *People v. Velasquez,* 189 Mich.App 14, 16; 472 NW2d 289 (1991).

This Court reviews a trial court's decision whether to grant a new trial for an abuse of discretion. *People v. Daoust,* 228 Mich.App 1, 16; 557 NW2d 179 (1988). An abuse of discretion occurs when the decision is manifestly against the great weight of the evidence. *Id.*

This issue also involves statutory interpretation, which is a question of law that this Court reviews de novo. *People v. Thousand,* 465 Mich. 149, 156; 631 NW2d 694 (2001). If the language of a statute is clear, no further analysis is necessary or allowed to expand what the Legislature clearly intended to cover. *People v. Pasha,* 466 Mich. 378, 382; 645 NW2d 275 (2002).

A. The Prosecutor's "Judicial Admission" During Closing Argument

Defendant argues that a directed verdict should have been granted because the prosecutor, by way of "judicial admission," waived part of the prosecution's case, namely that defendant resisted and obstructed by failing to exit her vehicle as ordered by Sergeant White. However, contrary to defendant's assertion, the prosecutor's case was based solely on her failure to display the requested documents. The prosecution set forth its theory in opening statement: "And for the defendant's actions on that day, she has been charged with resisting and obstructing. Resisting and obstructing because she would not turn over the required information ." The prosecution reiterated this theory in closing argument. There was no "judicial admission" or waiver of any part of the prosecution's case.

Defendant also argues unpersuasively that the prosecution "relinquished" "the remaining claim of wrongdoing" when Deputy Carter testified that it was not unreasonable for defendant to request his ID. Defendant concludes that this testimony "relates to the failure to turn over the driver's license to him and the reasonableness of waiting for Sergeant White to do so[.]" However, the cited testimony cannot be extended to the meaning suggested by defendant. Even though defendant's request for ID may have been considered reasonable by Deputy Carter, it does not preclude a finding that defendant's failure to display the requested documents obstructed Deputy Carter's investigation.[2]

B. Sufficient Evidence/Great Weight of the Evidence

*4 Defendant also argues that the trial court erred in denying her motion for directed verdict or new trial because the evidence did not show that she physically interfered with a police officer's attempt to maintain peace or threatened to do so. We disagree.

Pursuant to M.C.L. § 257.311, "The licensee shall have his or her operator's or chauffeur's license, or the receipt described in section 311a, in his or her immediate possession at all times when operating a motor vehicle, and shall display the same upon demand of any police officer, who shall identify himself or herself as such." In the trial court, defendant argued that her "display" of the driver's license against the window was sufficient under this statute. "Display" is defined as "to show or exhibit; make visible." Random House Webster's Unabridged Dictionary 2d ed. Because the plain meaning of this term is unambiguous, judicial construction is unnecessary. *Pasha, supra* at 382.

Based on the plain meaning of the statute, a driver's license is not displayed if the information on the license is not visible. In this case, defendant was driving a Chevy Tahoe, a tall sport-utility vehicle (SUV). Deputy Carter testified that he could not see the information on the license. Defendant put the driver's license through a small slit in the window. But, when Deputy Carter reached for it, defendant pulled it back. As Sergeant White testified, he had to stand on the runner board to see and converse with plaintiff. Thus, the evidence supports a finding that the window was high enough to prevent Deputy Carter from viewing the information on the driver's license when it was pressed against the window or briefly pushed through the one-inch opening. Because Deputy Carter was unable to view the information on the license, it was not displayed.

We further find that defendant's failure to properly display her driver's license amounted to an obstruction. According to *Vasquez,* an obstruction is defined as "both violent and nonviolent physical interference." Based on this definition, defendant's refusal to open her window and properly display her driver's license presented a nonviolent physical interference. The vehicle size and the small opening in the window were physical barriers that prevented Officer Carter from viewing the information on the driver's license. Defendant argues that her eventual surrender of her license precludes her conviction. However, several facts weigh against this argument. First, this routine traffic stop took approximately one hour. In *Vasquez,* the Court noted that causing a delay may amount to obstruction. *Vasquez, supra* at 99 n 10. Second, defendant's declared fear that the officers were "fake cops" (which may have justified the delay) was countered by evidence including her own statements. Defendant testified that she turned on her tape recorder when approached by Deputy Carter because "police lie." Before Sergeant White arrived, defendant called someone stating that she was in a confrontation with the sheriff's department. Additionally, the dispatcher was taped telling defendant that the officers were employed by the sheriff's department. Third, and most important, defendant displayed the documents only after Sergeant White threatened to break her window. As reflected in both the audio and videotapes of this event, defendant explicitly stated that she was handing over the documents because she was under duress and felt threatened. Defendant's refusal to comply with the officers' request to turn

over her documents, although passive conduct, rose to the level of threatened interference because the officers were put in a situation in which in order to obtain the documents, they would have had to break the window of her vehicle and obtain them against defendant's will. *Id.* at 97; *Philabaun, supra.*

***5** Furthermore, the evidence showed that Deputy Carter requested plaintiff's registration and proof of insurance in his initial contact with defendant. The documents that defendant ultimately produced included an improper registration that did not include the VIN of the vehicle she was then driving and an expired proof of insurance. Defendant argues that she could not be convicted of resisting and obstructing for failing to provide documentation that she did not possess. However because defendant possessed faulty registration and proof of insurance, the real question is whether defendant's delay in displaying these documents obstructed Deputy Carter's investigation. As with the driver's license, defendant did not produce these items until Sergeant White threatened to break the window of her vehicle. Additionally, she withheld them even after she had verification by both Sergeant White and the 911 dispatcher that the officers were not "fake cops."

D. Oaths of Office

Defendant next argues that the trial erred in denying her motions for directed verdict and new trial because the prosecution failed to prove Deputy Carter and Sergeant White were officers, an element of the charged crime. Defendant has failed to produce one citation to case law, statute, or court rule for authority that an oath of office must be "executed" in a person's "legal name" or as to what constitutes a "legal name." At trial, defendant presented oaths of office that she found on file. Deputy Carter testified that he swore and signed an oath of office. Upon viewing a copy of his signed oath of office, he testified that he used the name "E. Carter." Sergeant White also identified an oath of office for "Paul Ray White," which he testified is his name, although he goes by "Raymond White." Therefore, there was evidence that both officers swore oaths of office and filed the same.

Defendant also argues that the prosecution failed to prove that the officers were in fact employed by the sheriff's department. Defendant specifically argues that agency may not be established by proof of declarations by the supposed agent which is a correct statement of the law contained in *In re Union City Milk Co,* 329 Mich. 506, 513; 46 NW2d 361 (1985). However, the prosecution did not have the burden of proving that the officers were agents of the police department. The relevant element of the crime is that the obstruction be of an officer. The prosecution presented testimonial evidence that Deputy Carter and Sergeant White were police officers. Whether this was true was a question of credibility for the jury to decide. Even if the prosecution were required to specifically prove the officers' agency, defendant overlooks the evidence of the audiotape in which the dispatcher verified that Deputy Carter and Sergeant White were employed by the sheriff's department.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the elements of the charged crime were proved beyond a reasonable doubt and the verdict was not manifestly against the clear weight of the evidence. Therefore, the trial court did not err in denying defendant's motion for directed verdict or new trial.

III. Jury Instructions

***6** Defendant next argues that the trial court erred in instructing the jury. We disagree.

Generally, preservation requires an objection in the trial court to an instruction that was given or a request that the trial court give an omitted instruction. MCR 2.516(C); MCL 768.29; *People v. Mills,* 450 Mich. 61, 80-81; 537 NW2d 999 (1995). Any error that was not properly preserved, this Court reviews for plain error affecting the defendant's substantial rights. *People v. Knapp,* 244 Mich.App 361, 375; 624 NW2d 227 (2001), citing *People v. Carines,* 460 Mich. 750, 766-767; 597 NW2d 130 (1999). A preserved instructional error is reviewed for harmless error. *People v. Cornell,* 466 Mich. 335, 362-364; 646 NW2d 127 (2002).

This Court reviews de novo a defendant's claim of instructional error. *People v. Hubbard (After Remand),* 217 Mich.App 459, 487; 552 NW2d 593 (1996). This Court reviews jury instructions in their entirety, rather than piecemeal, to determine whether the trial court committed error requiring reversal. *People v. Piper,* 223 Mich.App 642, 648; 567 NW2d 483 (1997). "Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *Id.*

First, defendant argues that the trial court erred in failing to instruct the jury that defendant could not be convicted of

resisting and obstructing if her actions were in furtherance of her constitutional rights, specifically the First Amendment right of freedom of association and the Fifth Amendment right to remain silent. The trial court correctly refused to give this instruction because the charge against defendant was that she failed to display her driver's license, registration, and proof of insurance. Thus, defendant's refusal to associate with or speak to the officers was not related to the charges against her. It would have been inaccurate for the trial court to instruct that plaintiff could be found not guilty for exercising these constitutional rights because the charges against her did not relate to any act that would have fallen within her exercise thereof.

Second, defendant argues that the trial court erred in instructing the jury that the police have authority to order a person out of a vehicle during a routine traffic stop. This instruction did not relate directly to an element of the charge against defendant because defendant's refusal to exit her vehicle was not a basis for the charge against defendant. Nonetheless, the instruction related to the jury that Sergeant White had authority to order defendant to exit her vehicle. Therefore, the instruction was not improper because if fairly presented an issue raised at trial.

Third, defendant argues that the trial court erred in denying her request to instruct the jury that if they found that the officers did not file appropriate oaths of office that a verdict of not guilty must be entered. The trial court did not err in providing this instruction. One of the elements of the charge is that the person defendant resisted or obstructed be an officer. Defendant's requested instruction would not have fairly presented this issue. First, although defendant presented her own testimony that the oaths of office filed were not appropriate, defendant did not present any authority regarding what constitutes a valid oath of office. Thus, to instruct the jury that failure to file "appropriate oaths of office" must result in a verdict of not guilty would have been incomplete and inaccurate. Further, as discussed *supra,* there was evidence of that Deputy Carter and Sergeant White were employed by the sheriff's department.

**\*7** Finally, defendant argues that the trial court erred in instructing the jury "Now you've heard testimony from witnesses who are police officers." Defendant did not object to this instruction so it is forfeited unless defendant shows that it was plain error affecting her substantial rights. Defendant argues that this instruction invaded the province of the jury. The trial court instructed the jury: "Now, you've heard testimony from witnesses who are police officers. This testimony is to be judged by the same standard you use to evaluate the testimony of other witnesses." The purpose of this instruction was not to instruct the jury that they should find that Deputy Carter and Sergeant White were police officers. Rather, the purpose was to instruct the jury that they should not give more weight to the testimony of a police officer than that of a non-police officer. Even if the instruction could be construed as invading the province of the jury, the trial court provided a curative instruction. The trial court instructed the jury "You're the only judges of the facts and you should decide this case from the evidence." The trial court also instructed: "My comments, rulings, questions, and instructions are also not evidence ." As a general rule, jurors are presumed to follow their instructions. *People v. Dennis,* 464 Mich. 567, 581; 628 NW2d 502 (2001). Therefore, defendant has failed to show that the trial court's instruction was plain error affecting her substantial rights.

IV. Sentencing

Defendant next argues that the trial court erred in sentencing defendant. We find that it did not, but it erred in imposing a $60 crime victims rights fee for defendant's misdemeanor conviction because the correct fee for a misdemeanor is $50.

Defendant failed to preserve this issue by raising it below and thus review is precluded unless she demonstrates plain error that affected her substantial rights. *People v. Kimble,* 252 Mich.App 269, 277-278; 651 NW2d 798 (2002); *Carines, supra* at 763-764. This Court reviews sentencing issues for abuse of discretion. *People v. Rice (On Remand),* 235 Mich.App 429, 445; 597 NW2d 843 (1999).

At the time of defendant's sentencing, M.C.L. § 750.479 provided: "Any person who shall knowingly and willfully obstruct, resist or oppose any sheriff ... shall be guilty of a misdemeanor punishable by imprisonment in the state prison not more than two (2) years, or by a fine of not more than one thousand [1,000] dollars."[3] Here, the trial court sentenced defendant to pay a fine of $1,000. The trial court also imposed a $60 crime victims rights fee. The trial court noted before sentencing defendant that she had served one day in jail for which she was given credit.

Defendant first argues that the trial court erred in imposing both a one day prison sentence and a $1,000 fine. However, the record clearly shows that this one day in jail was not a

sentenced imposed by the trial court. Rather, the trial court recognized that defendant had spent one day in jail prior to sentencing, for which she gave defendant credit.[4]

**\*8** Defendant also argues that the trial court erred in imposing a fine over $1,000. Specifically, defendant argues that the crime victims rights fee was part of defendant's sentence. Under the Crime Victims Rights Services Act (CVRSA), M.C.L. § 780.901 *et seq,* M.C.L. § 780 .905(1) provides: "The court shall order each person convicted of a felony to pay an assessment of $60.00 and each person convicted of a serious misdemeanor or a specified misdemeanor to pay an assessment of $50.00." Thus, this assessment was not part of defendant's sentence, but rather, a fee that the trial court was required to assess pursuant to the CVRSA. "[T]he Legislature, pursuant to the authority granted it under Cont 1963, art 1 § 24(2) and (3), has provided for the assessment against certain defendants for the benefit of all victims." *People v. Mathews,* 202 Mich.App 175, 177; 508 NW2d 173 (1993).

Although both of defendant's arguments are without merit, the trial court erred in imposing a $60 crime victims rights fee on defendant who was only convicted of a misdemeanor. MCL 750.479. Pursuant to M.C.L. § 780.905, the correct assessment for a misdemeanor is $50. Therefore, we remand for a correction in this regard.

V. Motion to Quash Information/Dismissal/Directed Verdict

Defendant next argues that the trial court erred in denying defendant's motions to quash the information and for dismissal/directed verdict. We disagree.

This Court reviews the circuit court's analysis of a bindover de novo and the magistrate's bindover decision for an abuse of discretion. *People v. Hudson,* 241 Mich.App 268, 276; 615 NW2d 784 (2000). A trial court's ruling on a motion to dismiss is reviewed for abuse of discretion. *People v. Adams,* 232 Mich.App 128, 132; 591 NW2d 44 (1998). A trial court's ruling on a motion for directed verdict is reviewed de novo. *Aldrich, supra* at 127.

To bind a defendant over for trial on a felony charge, the magistrate must find that there is sufficient evidence to indicate that a felony has been committed and probable cause that the defendant committed it. *People v. Hill,* 433 Mich. 464, 469; 446 NW2d 140 (1980). There must be evidence of each element of the crime charged or evidence from which each element may be inferred. *Id.* Probable cause "signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v. Justice (After Remand),* 454 Mich. 334, 344; 562 NW2d 652 (1997) [quoting *Coleman v. Burnett,* 155 U.S. App DC 302, 316-317; 477 F.2d 1187 (1973) ].

MCL 750.479 states: "[a]ny person who knowingly and willfully obstructs, resists or opposes any [police officer] in attempting to ... execute any process, rule or order issued by lawful authority" is guilty of violating the statute. As discussed *supra,* our Supreme Court construed "obstruct" to mean both violent and nonviolent physical interference. *Vasquez, supra.* "[B]oth physical interference that poses a threat to the safety of police officers ("assault, beat, or wound") *and* physical interference that does not necessarily, but nevertheless may, pose a threat to the safety of police officers ("obstruct, resist, [or] oppose") are proscribed." *Id.* at 94. The evidence at the preliminary examination was sufficient to allow the magistrate to find probable cause that defendant obstructed Deputy Carter's investigation during a routine traffic stop by withholding her driver's license, registration, and proof of insurance even after Deputy Carter produced verification of his identity and defendant herself received confirmation of his identity from a 911 dispatcher.

**\*9** Defendant also argues that the finding of probable cause was improper because Deputy Carter failed to tell the truth, the whole truth and nothing but the truth in the initial swear to of the complaint. Specifically, defendant contends that Deputy Carter failed to tell the magistrate that defendant eventually turned over her driver's license and "did not have the registration." Defendant contends that this would have "eliminated any pretense of probable cause." However, as discussed *supra,* defendant's eventual surrender of her driver's license did not preclude her conviction, let alone a finding of probable cause because the resisting and obstructing arose from the act of refusing to display the documents thereby causing a physical interference that resulted in a delay of Deputy Carter's investigation. With regard to the registration, the evidence supported the charge of resisting and obstructing because defendant possessed faulty registration, but failed to display it as requested until Sergeant White threatened to break the window of her vehicle.

Therefore, the district court did not abuse its discretion by binding defendant over on the charge of resisting and obstructing a police officer. Consequently, the trial court

did not err in denying defendant's motions to quash the information and for dismissal/directed verdict.[5]

VI. Amendment to Information

Defendant next argues that the trial court erred in allowing an amended information after the preliminary examination. We find that it did not.

Before, during, or after trial, a court may permit the prosecutor to amend the information unless the proposed amendment would unfairly surprise or prejudice the defendant. MCR 6.112[ (H) ]; *People v. Goeke,* 457 Mich. 442, 473; 579 NW2d 868 (1998). The circuit court did not add a charge in this case, but rather amended the original information to assert that defendant "knowingly and willfully obstruct[ed] ... Deputy E. Carter and/or Sergeant R. White" rather than that defendant "knowingly and willfully obstruct[ed] ... Deputy E. Carter ... [.]" This amendment did not result in the addition of a new charge and could not have surprised or otherwise unfairly prejudiced defendant because Sergeant White testified at the preliminary examination and was subject to defendant's cross-examination. Therefore, we find the trial court did not err in allowing the amended information.

VII. Request for Counsel

Defendant next argues that the district and circuit courts deprived defendant of equal protection by denying her request for assistance while she proceeded in propria persona. We find that they did not.

To begin with, defendant addresses this issue very generally failing to point out at which "critical stages" of trial she was denied assistance. She also fails to discuss fully how she requested "assistance," the person whose assistance she sought, or exactly how the trial court addressed defendant's request. Additionally, defendant does not cite to the record once in her brief on this issue as required by MCR 7.212(C)(7). A defendant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *People v. Watson,* 245 Mich.App 572, 586; 629 NW2d 411 (2001). Failure to cite to the record results in abandonment. *Id.*

*\*10* Despite this deficiency, we address defendant's argument which is based on the Sixth Amendment right to effective assistance of counsel and the equal protection clause. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v. LeBlanc,* 465 Mich. 575, 579; 640 NW2d 246 (2002). This Court reviews the trial court's factual findings for clear error. *Id.* This Court reviews constitutional questions de novo. *Id.* To establish a denial of effective assistance of counsel, a defendant must prove that his counsel's performance was deficient in that, under an objective standard of reasonableness, defendant was denied his Sixth Amendment right to counsel. *People v. Carbin,* 463 Mich. 590, 599-600; 623 NW2d 884 (2001). The equal protection guarantee requires persons under similar circumstances to be treated alike. U.S. Const, Am XIV; Const 1963, art, sec 2.

Although defendant argues that she was denied her right to effective assistance of counsel, she does not argue that her counsel was ineffective. Rather, in an unusual interpretation of the phrase "effective assistance of counsel," defendant argues that she, proceeding in propria persona, was entitled to assistance by a non-lawyer of her choice.[6] She further argues that the trial court's denial of her request violated her right to equal protection. Thus, this issue evades the standard analysis of whether a defendant was denied effective assistance of counsel. However, a review of the lower court record reveals that defendant was not denied effective assistance of counsel or equal protection because (1) she was allowed to proceed in propria persona as she requested, (2) was permitted to consult with the non-lawyer from whom she sought assistance, (3) was additionally provided with the assistance of a licensed attorney, and (4) was allowed to proceed to trial with her "second choice" attorney.

VIII. Cumulative Errors

Defendant also argues that she denied a fair trial by the cumulative effect of harmless errors. Because we do not find any errors, reversal is not warranted due to cumulative error. *People v. Daoust,* 228 Mich.App 1, 16; 577 NW2d 179 (1998).

Affirmed and remanded for correction of the crime victims rights fee.

**All Citations**

Not Reported in N.W.2d, 2003 WL 21464816

Footnotes

1   Although neither party discusses the retroactivity of this decision, judicial decisions generally are fully retroactive. *People v. Neal,* 459 Mich. 72, 80; 586 NW2d 716 (1998). In criminal cases, ex post facto and due process concerns prevent retroactive application in some cases. *People v. Doyle,* 451 Mich. 93, 100-101; 545 NW2d 627 (1996). This is especially true where the decision is unforeseeable and has the effect of changing existing law. *Id.* at 101. But, retroactive application does not implicate due process or ex post facto concerns where the decision does not change the law and is not unforeseeable. *Id. Vasquez* merely clarified the meaning of M.C.L. § 750.479, but did not change the law.

2   Additionally, defendant's tape recording of the incident revealed defendant knew she was dealing with duly authorized officers:
>   Hi, this is Linda Heldt. I'm going to be late. *I'm having a confrontation with the Sheriff's Department right now.* No, I don't know, because I won't -
>      Well, he's trying to, but he won't show me his ID.
>      No, he doesn't have it with him. So he's calling his supervisor. (Unclear).
>   He said, well-he said, well, I'd like your ID. I says, I don't have to give it to you. (Emphasis added).

3   Effective July 15, 2002, the statute was amended to provide in relevant part: "[A] person who violates this section is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of more than $2,000, or both."

4   Even if the trial court had sentenced defendant to both a fine and imprisonment, we find no error. Pursuant to M.C.L. § 769.5 "Whenever it is provided that an offender shall be punished by ... fine or imprisonment, the court may impose both such fine and imprisonment in its discretion." *People v. Krum,* 374 Mich. 356, 361; 132 NW2d 69 (1965); *People v. Lueth,* 253 Mich.App 670, 691; 660 NW2d 322 (2002).

5   Defendant also complains that the prosecution failed to provide a true copy of the complaint. However, we decline to address this issue because it is not set forth in defendant's statement of the issues presented. *People v. Brown,* 239 Mich.App 735, 748; 610 NW2d 234 (2000). In any event, defendant has failed to discuss how a true copy would have differed from the copy filed in the lower court and available to defendant from the time of filing.

6   We note that the "counsel" defendant requested was not licensed to practice law in Michigan, has been sued by the State Bar for practicing law without a license, and is permanently enjoined from practicing law in this state.