2011 WL 2893024
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

MOORISH NATIONAL REPUBLIC:
FEDERAL GOVERNMENT MOORISH
DIVINE AND NATIONAL MOVEMENT
OF THE WORLD, et al., Plaintiffs,
v.
The CITY OF CHICAGO and
Mayor Daley, Defendants.

No. 10–cv–1047.
|
July 19, 2011.

**Attorneys and Law Firms**

Sheikess Diana El, Chicago, IL, pro se.Sheik L. Love El, Chicago, IL, pro se.

Gail Lynne Reich, City of Chicago, Department of Law, Chicago, IL, Scott J. Jebson, City of Chicago, Department of Law, Individual Defense Litigation, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

ROBERT M. DOW, JR., District Judge.

 *1  This matter is before the Court on two motions for summary judgment [37 and 51] and a motion for default judgment [53] filed by Plaintiffs, and on Defendants' motion to dismiss Plaintiffs' complaint [43]. For the reasons set forth below, the Court grants Defendants' motion to dismiss [43]. Plaintiffs' motions for summary judgment [37 and 51] are denied as moot, and Plaintiffs' motion for default judgment [53] is denied.

**I. Background**[1]

  **A. Procedural History**

Plaintiffs Moorish National Republic: Federal Government Moorish Divine and National Movement of the World, the Moorish Science Temple of America, Sheikess Diana EL ("Sheikess" or "Diana"), and Sheik Lyonel Love EL ("Sheik" or "Lyonel") filed a complaint against the City of Chicago and Mayor Daley alleging violations of their civil rights by Chicago Police Department officers as well as Mayor Daley in three separate incidents, including federal claims under 42 U.S.C. § 1983, a *Monell* policy claim, and numerous Illinois State law claims. Giving the complaint a generous reading, Plaintiffs' complaint alleges the following causes of action: false arrest pursuant to § 1983 (Count I); false arrest under Illinois state law (Count II); malicious prosecution under Illinois state law (Count III); breach of contract under Illinois state law (Count IV); a § 1983 claim against Mayor Daley personally (Count V); a *Monell* policy claim against the City (Count VI); an indemnification claim against the City pursuant to the Tort Immunity Act (Count VII); a claim for *respondeat superior* against the City (Count VIII); a class action claim against the City (Count IX); injunctive relief (Count X); a duplicate malicious prosecution claim (Count XI)[2]; negligence (Count XII); and tortious interference (Count XIII). Defendants have moved to dismiss all claims for failure to state a claim upon which relief may be granted.[3]

  **B. Facts**

In what Plaintiffs' complaint refers to as "Incident # 1," Lyonel was stopped by Officer Angel Grasser on May 12, 2009. Compl. at ¶ 12. Lyonel did not consent to a search, but "submitted [his] paperwork." *Id.* He was cited for several traffic violations, including violations of 625 ILCS 5/12–603.1 (no seat belt), 625 ILCS 5/3–701–1 (no valid registration), 625 ILCS 5/6–101 (no driver's license), and 625 ILCS 5/3–707 (no insurance), arrested, searched, and his vehicle was impounded. He was transported to a "processing facility" and questioned about his identity. He was released five hours later. Lyonel alleges that some of his items (Moorish paperwork and "Oils") were missing. Lyonel was required to appear in state court to answer to the traffic violations on August 12, 2009, but failed to do so and a judgment on bond forfeiture was entered against him as to each traffic violation. See Certified Statement of Disposition for *People of the State of Illinois or City of Chicago v. Lyonel Love El,* Nos. TT067843, TT067844, TT067845 and TT067847, attached to Def. Resp. as Ex. A.[4]

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S. Government Works.                                    1

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World
v. City of Chicago 0001

*2 In what the complaint refers to as "Incident # 2," Diana was stopped by Officer Nicholas Jovanovich on November 30, 2009. Officer Jovanovich requested Diana's license and inquired about the absence of state-issued license plates. In response, Diana cracked her window "slightly" to pass the officer her "papers." He then insisted that she open the door, but she refused, prompting the officer to radio for backup. Approximately five minutes later, several additional officers arrived on the scene, and Officer Robert Kelley approached the car. Diana told the officer that she is "not a 14th/15th Amendment citizen" and that she was "traveling under the status of Free National citizen—as a Moorish–Skeikess" and she demanded that they provide probable cause for the traffic stop. Compl. at ¶ 23. According to Plaintiffs' complaint, "[t]he defendant response was that he deemed the absence of state issue license plate as probable cause for the stop and further cited what the state of Illinois requires of drivers (license, registration, and insurance)." *Id.* at ¶ 24. According to the complaint, rather than producing the requested information or open the door, Diana cited "case law" including *"Chicago Motor Coach v. City of Chicago."* At this point, the officer hit and shattered the glass and attempted to pull her from the vehicle, but she slid to the passenger side. Officer Kelley then threatened to shoot her with a taser gun if she did not exit the vehicle and a second female officer threatened to use mace if she did not voluntarily leave the vehicle. When Diana finally was removed from the vehicle, her clothing was partially torn and her religious headdress was thrown to the ground. She was handcuffed and transported to a police station. While at the station, she was searched by two uniformed female officers. She was asked if she required medical attention, and she stated that she did not. She was processed and released at 6 a.m.

In what the complaint refers to as "Incident # 3," Lyonel again was stopped by Chicago Police Officers on January 31, 2010. Complaint at ¶¶ 10, 35, 36. He was threatened by the officers and told to put his car in "park" and open the door. When he did not do so, the officers broke the window and "snatch[ed] him up out of the vehicle, causing [him] injury." *Id.* at ¶¶ 37–39. He then was forced to the ground, handcuffed, and taken into custody. *Id.* at ¶ 40. The officers took his cell phone, wallet, keys, and religious pin and charm. The officers asked Lyonel if he wished to go to the hospital, to which he replied "yes." *Id.* at ¶ 41. He subsequently was transported to the hospital. *Id.* at ¶ 42. Lyonel's car was impounded and in order to retrieve his car from the pound, he would have had to pay $1000, due to an alleged narcotics violation.

Lyonel was cited for several traffic violations, including 625 ILCS 5.0/6–303–A (driving on a suspended license), 625 ILCS 5/3–707 (no insurance), and MCC 9–16–050(B) (no turn signal), arrested, and released five hours later. See Certified Statement of Disposition for *People of the State of Illinois or City of Chicago v. Lyonel Love El,* Nos. TT474388, TT474389, TT474385, attached to Def. Resp. as Ex. B. His vehicle also was impounded. *Id.* Lyonel was required to appear in court to answer to the traffic violations on August 12, 2010, but failed to do so, which resulted in the entry of a judgment on bond forfeiture against him as to each traffic violation.

**II. Legal Standard**

*3 A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly,* 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley,* 420 F.3d 673, 677 (7th Cir.2005). While a *pro se* litigant's pleadings are held to a lesser standard, the *pro se* litigant must comply with the court's rules and procedures. See *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996); *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir.1994).

**III. Initial Matters**
Before addressing the factual allegations and specific claims set forth by Plaintiffs, the Court must address some preliminary matters.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 2

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0002

### A. Representation of Other Parties by Plaintiff Sheik Lyonel Love El

The only plaintiffs who have appearances on file in the present case are Sheik Lyonel Love EL and Sheikess Diana Love EL. The absence of appearances on behalf of Plaintiffs Moorish National Republic: Federal Government Moorish Divine and National Movement of the World and the Moorish Science Temple of America was brought to Plaintiffs' attention by Magistrate Judge Keys on August 27, 2010, as well as by this Court on September 21, 2010, and also was reiterated throughout Defendants' motion to dismiss filed on September 30, 2010. The complaint concedes that the Moorish Science Temple of America is a religious corporation, and it is clear that the Moorish National Republic: Federal Government Moorish Divine and National Movement of the World is not a natural person but rather is an entity. Regrettably, there has been no sign of compliance with the Court's repeated admonitions to obtain counsel on behalf of the entities. See *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("a corporation may appear in the federal courts only through licensed counsel"). It is well-established law that *pro se* litigants (such as Plaintiff Lyonel) cannot represent other individuals or corporations. *Nocula v. Tooling Systems International Corp.,* 520 F.3d 719, 725 (7th Cir.2008) ("corporations cannot appear *pro se,* and one *pro se* litigant cannot represent another") (citations omitted); see also *Edwards v. Lake Terrace Condo. Ass'n,* 2011 WL 1548023, at *1 (N.D.Ill. Apr.21, 2011). In spite of the state of the law as well as repeated admonitions to obtain counsel on behalf of the entities, no additional appearances have been filed. Because Plaintiffs have had ample time to secure counsel for the Moorish National Republic: Federal Government Moorish Devine and National Movement of the World and the Moorish Science Temple of America but have failed to do so despite having been so advised, the Court will not consider the claims asserted on behalf of either entity. See generally 28 U.S.C. § 1654. All claims in Counts I through XIII on behalf of The Moorish National Republic: Federal Government Moorish Devine and National Movement of the World and the Moorish Science Temple of America are dismissed.

**\*4** The Court also notes that the claims of Sheikess Diana EL likewise are not properly before the Court at this time. Although Plaintiff Diana EL has filed an appearance, there are no pleadings, including the complaint, that have been signed by her. All the pleadings on file have been signed by Sheik Love EL. Even a *pro se* litigant must sign pleadings —among other reasons, the signature either by a party or by counsel on behalf of a party attests to the truthfulness of the pleading and that adequate investigation has been made into the claims asserted, as Federal Rule of Civil Procedure 11 requires.[5] See also *Abdul–Wadood v. Debruyn,* 89 F.3d 838 (7th Cir.1996) (affirming that, because only one plaintiff signed the complaint, the complaint was properly dismissed without prejudice); *Ghashiyah v. Frank,* 2008 WL 680203, at *3 (N.D.Ill. Mar. 10, 2008) (noting that "one *pro se* plaintiff cannot sign on behalf of other *pro se* plaintiffs"). As a non-attorney, Lyonel may represent himself (as he has done), but he may not represent the entities or Sheikess Diana EL. See *Strong Delivery Ministry Ass'n v. Board of Appeals of Cook County,* 543 F.2d 32, 34 (7th Cir.1976); see also *Lindstrom v. State of Illinois,* 632 F.Supp. 1535 (N.D.Ill.1986) (finding that non-lawyer was not permitted to represent his wife). Although an individual's right to plead his or her own case is protected, that right has never been extended to permit an individual non-attorney to act on behalf of a corporation or another person. Here, Lyonel—who is not a licensed attorney—is attempting to appear for the other named Plaintiffs and he simply cannot do so. Diana has been repeatedly warned that she may not be represented by Lyonel. Despite these admonitions, Diana has not signed any of the pleadings or secured proper counsel, and Plaintiffs have chosen not to address Defendants' argument that Diana is not a proper party in their response brief. Her claims are not properly before this Court and are dismissed without prejudice.[6]

### B. Class Action Claims

Additionally, Plaintiffs indicate that they seek to file this suit as a class action. The Court finds that maintaining this suit as a class action is not appropriate under the circumstances of this case. One of the prerequisites for class action certification is a finding that the representative parties can "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In determining the adequacy of representation, the Court considers the qualifications and experience of the person actually conducting the litigation. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986); see also *Mendez v. M.R.S. Associates,* 2004 WL 1745779, at *5 (N.D.Ill. Aug.3, 2004). Competent representation is crucial because a judgment rendered in a class action suit for injunctive relief is binding on all members of the class. See, e.g., *Pavone v. Aegis Lending Corp.,* 2006 WL 2536632, at *3 (N.D.Ill. Aug.31, 2006).

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 3

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0003

**\*5** Because a lay person does not ordinarily possess the legal training and expertise necessary to protect the interests of a proposed class, courts are reluctant to certify a class represented by a *pro se* litigant. See, *e.g., TurnerEL v. Illinois Bd. of Educ.,* 1995 WL 506011, at \*5 (N.D.Ill. Aug.22, 1995). Given Plaintiffs' *pro se* status, the Court concludes that Plaintiffs cannot "fairly and adequately protect the interests of the class" and that it would be improper for this case to proceed as a class action. See also *Johnson v. Chicago Public Schools,* 2010 WL 2891629, at \*2 (N.D.Ill. July 20, 2010). Furthermore, to the extent that the complaint purports to bring a class action claim, asserting that "he and others have been deprived of rights," Plaintiffs' response to Defendants' motion to dismiss cites no case law or facts which would support the Court's certification of a class. For instance, Plaintiffs have done nothing to identify who these "others" might be that comprise a potential class of "others [who] have been deprived of rights." Not only are there no other potential class members identified in the complaint, but Plaintiffs have not provided any facts to demonstrate numerosity, common questions of law and fact among the purported class members, whether the claims or defenses would be typical, or whether the representative parties would fairly and adequately protect the interests of the class—all requirements under the federal rules in order to assert a class claim. In sum, Plaintiffs' class action claim fails because they have not complied with the requirements of Rule 23. As such, Count IX is dismissed.

### C. Mayor Daley

Suing Mayor Daley in his official capacity "is merely another form of claim against the government entity itself. Damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity." *Wolf–Lillie v. Sondquist,* 699 F.2d 864, 871 (7th Cir.1983). Thus, to the extent that Plaintiffs are suing Mayor Daley in his official capacity, this claim is redundant of their claims against the City of Chicago. See *Jungels v. Pierc* e, 825 F.2d 1127, 1129 (7th Cir.1987) (finding that suit naming as defendants a city and its mayor (in his official capacity) was actually a suit against the city only because "nothing was added by suing the mayor in his official capacity"); see also *Schmindling v. City of Chicago,* 1 F.3d 494, 495 n. 1 (7th Cir.1993) (approving district court's dismissal of claims against a mayor in his official capacity because the same claim was filed against the city). To the extent that Plaintiffs are suing Mayor Daley in his individual (or personal) capacity, Plaintiffs' complaint and response brief are devoid of any facts or claims which demonstrate that Mayer Daley had any personal involvement in any alleged wrongdoings.[7] See *Almaraz v. Haleas,* 2008 WL 4547222, at \*6–7 (N.D.Ill. Apr.25, 2008) ("Mayer Daley is another step removed. It is alleged that he appointed the [administrator], but there is no allegation that he had direct control over the Police Department"). Because Plaintiffs have failed to state a claim upon which relief can be granted, all claims against Mayor Daley in Count V are dismissed.

### IV. Claims of Plaintiff Sheik L. Love El

**\*6** Plaintiff Lyonel alleges the following causes of action: false arrest pursuant to § 1983 (Count I); false arrest under Illinois state law (Count II); malicious prosecution under Illinois state law (Count III); breach of contract under Illinois state law (Count IV); a § 1983 claim against Mayor Daley personally (Count V); a *Monell* policy claim against the City (Count VI); an indemnification claim against the City pursuant to the Tort Immunity Act (Count VII); a claim for *respondeat superior* against the City (Count VIII); a class action claim against the City (Count IX); injunctive relief (Count X); a duplicate malicious prosecution claim (Count XI); negligence (Count XII); and tortious interference (Count XIII). The Court addresses Plaintiff's federal claims first.

#### A. § 1983 Claim for False Arrest[8]

Plaintiff appears to bring § 1983 claims against the City for unreasonable seizure of Plaintiff's person and property, and possibly for unreasonable detention, in violation of the Fourth and Fourteenth Amendments. To prove a claim under § 1983, Plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Defendant argues that the complaint concedes sufficient facts to support probable cause for Plaintiff's arrests on May 12, 2009, and January 31, 2010, and that Plaintiff fails to deny those facts in his response. Because "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution" (*Mustafa,* 442 F.3d at 547), the Court considers Plaintiff's federal unlawful seizure and unreasonable detention claims together.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir.2006) (citing *Potts*

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 4

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0004

v. City of Lafayette, 121 F.3d 1106, 1113 (7th Cir.1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." Id. (citing Simmons v. Pryor, 26 F.3d 650, 654 (7th Cir.1993)). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. Kelley v. Myler, 149 F.3d 641, 646 (7th Cir.1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard." Id.; see also Woods v. City of Chicago, 234 F.3d 979, 987 (7th Cir.2000); United States v. Reis, 906 F.2d 284, 289 (7th Cir.1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." Kelly, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. Id.

*7 Where the underlying facts supporting probable cause are not in dispute, a court may decide whether probable cause exists. See Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir.2009) (citing Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir.1993)). Once probable cause relating to an offense is established, all § 1983 liability against the arresting officer(s) is barred, "even if the person was arrested on additional or different charges for which there was no probable cause." Holmes v. Village of Hoffman Estate, 511 F.3d 673, 682 (7th Cir.2007) (citing Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)); Pourghoraishi v. Flying J., Inc., 449 F.3d 751, 762 (7th Cir.2006).

Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. Pourghoraishi, 449 F.3d at 761 (citing Williams v. Jaglowski, 269 F.3d 778, 782 (7th Cir.2001)). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Wren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); see also Carmichael v. Village of Palatine, Ill., 605 F.3d 451, 456–57 (7th Cir.2010)

Lyonel alleges that Chicago Police Officers arrested him without probable cause on May 12, 2009. The Certified Statement of Conviction indicates that he was charged with several traffic offenses, including no seat belt, no registration, no driver's license and no insurance. Probable cause for any one of these offenses is sufficient probable cause for Plaintiff's arrest. See, e.g., United States v. Jackson, 377 F.3d 715 (7th Cir.2004) (deciding that probable cause existed where police stopped a car, requested the driver's license, and decided to detain the driver "after he did not hand over a driver's license, and information from the police database raised doubts about his identity"). This is true even though the offenses may be punishable only by fine. See Atwater, 532 U.S. at 354 (holding that arrests for misdemeanor violations that would be punishable only by a fine do not offend any constitutional principles); Williams v. Jaglowski, 269 F.3d 778, 784 (7th Cir.2001); Antia v. Thurman, 914 F.Supp. 256, 258 (N.D.Ill.1996) (finding that officer had probable cause to arrest plaintiff when it was undisputed that the vehicle registration was expired). Lyonel does not cite any cases refuting these principles or point to any facts alleged in the complaint that negate a finding of probable cause (in fact, the allegations in the complaint support a finding of probable cause), but merely asserts that there was no probable cause to arrest without elaborating further. Throughout the complaint, Lyonel asserts that by virtue of the fact that he is a Moorish National, he is not subject to the laws of the United States, State of Illinois, or the City of Chicago. Therefore, he maintains that he is not required to wear a seat belt, register his car, carry a valid driver's license, or maintain insurance.

*8 Whatever the religious belief system of Plaintiffs, to which they are fully entitled, those beliefs, in and of themselves, do not save them from compliance with Illinois state law or the Chicago Municipal Code. Courts systematically have held that those who have claimed safe harbor and sought to be shielded by their Moorish heritage from the law have not been recognized, and their claims have been dismissed as frivolous. Although Plaintiffs' complaint is replete with assertions that there are international laws and the idea that Plaintiffs are members of the Moorish National Republic and that they are indigenous persons entitled to certain rights under international laws and treaties,

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 5

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0005

the Seventh Circuit has stated that "[a]ny claims or arguments based on that organization or which rely on documents or arguments based on the doctrines of those organizations are clearly frivolous." *Sanders–Bey v. U.S.,* 267 Fed. Appx. 464, 466 (7th Cir.2008); *U.S. v. Toader,* 409 Fed. Appx. 9, at *13 (7th Cir. Nov.24, 2010) ("[Defendant] argues that the federal courts lack subject matter jurisdiction over him and that the laws he is charged with violating are inapplicable to him because he is a Native Asiatic Moorish National Citizen. This argument is frivolous."); *United States v. James,* 328 F.3d 953, 954 (7th Cir.2003) ("Laws of the United States apply to all persons within its borders. Even if James were not a citizen of the United States (though he is, having been born here), he would be obliged to respect the laws of this nation."); see also *El–Bey v. North Carolina Dept. Of Health & Human Service,* 2010 WL 520877 (M.D.N.C.2010) (citing *Sanders*) (noting the irony presented when litigants from the Moorish Nation "attempt to benefit from the protection of federal and state law while simultaneously proclaiming independence from and total lack of responsibility under those same laws"). Notably, Plaintiffs seek the protections of the very Constitution to which they claim they are not subject and the laws that flow therefrom. A fair reading of the complaint and response brief reveals that Lyonel is claiming that there was no probable cause for his arrest because he is a Moorish National and not subject to the same requirements as United States citizens. Because this is the only argument that Lyonel appears to make, and it fails, his claim for false arrest for the May 12, 2009 arrest is dismissed.

Lyonel's claim for false arrest for "Incident # 3," which occurred on January 31, 2010, fails for the same reasons. On that date, he was issued traffic tickets for driving on a suspended license, no insurance, and no turn signal. Plaintiff does not contest the fact that he failed to signal and did not have a valid license or insurance; rather, he maintains that his status as a Moorish National exempts him from following basic traffic laws. This argument fails in light of mandatory Seventh Circuit precedent. The officers had probable cause for his arrest, which is an absolute defense to any claim under § 1983 against police officers for wrongful arrest.

### B. Monell Claim

*9 Plaintiff has alleged a *Monell* claim against Defendant City of Chicago. *Monell v. Department of Social Services of City of New York* provides that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, "[a] municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett,* 487 F.3d 482, 492 (7th Cir.2007). In *Monell,* the Supreme Court established that municipalities and other local government could be subject to liability under 42 U.S.C. § 1983 under certain limitations. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Calhoun v. Ramsey,* 408 F.3d 375 (7th Cir.2005). Importantly, however, the Court clearly held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Calhoun,* 408 F.3d 375, 379 (quoting *Monell,* 436 U.S. at 691). Liability exists only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* To allege a municipal policy has violated an individual's rights under § 1983, the plaintiff must allege: (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir.2000).

In the present circumstances, the City cannot be liable under *Monell* because, as set forth above, Plaintiff alleges no cognizable constitutional injury. See *Houskins v. Shehan,* 549 F.3d 480, 493 (7th Cir.2008) (where plaintiff fails to establish deprivation of a constitutional right, *Monell* claims must also fail); *Tesch v. County of Green Lake,* 157 F.3d 465, 477 (7th Cir.1998) (a *Monell* claim "requires a finding that the individual officers are liable on the underlying substantive claim."); *Alexander v. City of South Bend,* 433 F.3d 550, 557 (7th Cir.2006) (finding that a municipality defendant cannot be liable under *Monell* for a policy or custom of inadequately training or supervising its police officers, unless the defendant violated a constitutional guarantee); *Aguilera v. Baca,* 510 F.3d 1161, 1167, 1174 (9th Cir.2007) (noting that if no constitutional violation occurred, the court need not consider qualified immunity or a claim brought pursuant to *Monell*); *Wilson v. Morgan,* 477 F.3d 326, 340 (6th Cir.2007) (noting that if a jury found no constitutional violation by individual defendants, a county could not have been found liable under *Monell* for an allegedly unconstitutional custom or policy); *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) ("[B]ecause the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 6

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0006

correct"); see also *Durkin v. City of Chicago,* 341 F.3d 606, 615 (7th Cir.2003) ("a municipality cannot be found liable if there is no finding that the individual officer is liable on the underlying substantive claim"); *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). Because the Court has determined that Plaintiff's § 1983 claim alleging false arrest by the officers must be dismissed, Plaintiff's § 1983 claim against the City also fails.[9]

### C. State Law Claims

**\*10** Because the Court has dismissed all claims (Counts I, V, and VI) over which it has original jurisdiction, it must now address whether to retain jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit, animated by the principle of comity, consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir.1999); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir.1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993); see also *Wright v. Associated Ins. Co., Inc.,* 29 F.3d 1244, 1251 (7th Cir.1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * * "); see also *Horton v. Schultz,* 2010 WL 1541265, at \*4 (N.D.Ill.2010).

In *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–53 (7th Cir.1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiffs one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir.2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law count in Plaintiffs' complaint, as the case is at the motion to dismiss stage and discovery has not yet begun. *Wright,* 29 F.3d at 1251. Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims (Counts II, III, IV, VII, VIII, X, XI, XII, and XIII).

### V. Plaintiffs' Motion for Default Judgment

Plaintiffs' motion for default, filed on October 8, 2010, takes the same position that they have taken in several subsequent motions—that Plaintiffs are entitled to an order of default (and perhaps a default judgment) because Defendants did not file (and have not to this date filed) an answer to Plaintiffs' complaint. Plaintiffs' contention rests on a fundamental misapprehension of the Federal Rules of Civil Procedure, which the Court explained in its May 24 and May 27 minute orders and will explain for the last time here.

Federal Rule of Civil Procedure 12 governs the time to file a responsive pleading. As the Court previously noted, Rule 12 permits a party to file a motion to dismiss a complaint instead of filing an answer. The docket sheet in this case reflects that Defendants filed the instant motion to dismiss [43] on September 30, 2010. In fact, counsel for Defendants advised the Court and Plaintiffs that Defendants would proceed in such fashion at a September 21, 2010 status hearing and the Court set a briefing schedule on the anticipated motion to dismiss at that time [see 40]. Briefing on the original motion to dismiss was suspended by court order [see 59] dated November 29, 2010, following the filing by Defendants of a motion to dismiss this case on a different ground—namely, alleged misrepresentations by Plaintiff Sheik Love EL in his IFP application. After that second motion to dismiss was denied and Plaintiffs paid the sanction imposed in lieu of dismissal, the Court lifted the stay on briefing of the first motion to dismiss and set a deadline for the filing of the reply brief.

**\*11** The salient point is that because Defendants' first motion to dismiss remains pending before the Court, Defendants have been (and continue to be) under no obligation to file an answer to the complaint. Rule 12(a)(4) spells this out: "serving a motion under this rule"—which Defendants did on September 30, 2010—"alters these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action." Fed.R.Civ.P. 12(a)(4). The bottom line is that the soonest that an answer on behalf of Defendants conceivably could be due in this case would be 14 days after the Court denied the pending motion to dismiss. However, as set forth in this opinion, Defendants' motion in fact is granted, and therefore Defendants are under no obligation to file an answer at this time.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 7

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0007

One final point: the fact that the motion to dismiss predates the service of the summons does not alter the analysis. The docket sheet reflects that Defendants plainly had notice of the complaint and its contents and had appeared in Court on this matter repeatedly long before the Marshals Service actually executed the summons—as Plaintiffs undoubtedly were aware because they too were present in open court when counsel for Defendants stated that the motion to dismiss would be forthcoming and a briefing schedule was set. The complaint was available on the electronic docket from the beginning of the case. To be sure, Defendants could have waited for proper service before filing a motion to dismiss or a responsive pleading, but they were not obligated to do so. By filing their motion to dismiss and not raising any defect in service as a ground for dismissal, Defendants waived any objection that they may have had concerning the manner in which they were served.

**VI. Conclusion**

For the reasons stated above, the Court grants Defendants' motion to dismiss [43] in its entirety as to the claims asserted by Plaintiff Sheik L. Love EL; his federal claims are dismissed for failure to state a claim and his state law claims are dismissed without prejudice as the Court declines to exercise supplemental jurisdiction. The Court does not decide the merits of any claims asserted by Plaintiff Sheikess Diana EL at this time; she is given thirty days from the date of this order to file a motion for leave to amend the complaint if she believes that she can cure the defects identified by the Court. In addition to signing her pleadings (or submitting them through licensed counsel), Plaintiff Sheikess Diana EL must demonstrate that her proposed amendment would not be futile in view of the Court's analysis of Plaintiff Sheik L. Love EL's claims and the existence of probable cause with respect to those claims. Plaintiffs' motions for summary judgment [37 and 51] are denied as moot. Plaintiffs' motion for default judgment [53] is denied for the reasons previously, and repeatedly, stated by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2893024

Footnotes

1   For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, e.g., Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir.2007).
2   Although Plaintiffs have identified the remaining counts as "IX", "IIX" and "IIIX" in their complaint, leaving the designations as Plaintiffs have would result in two counts identified as "IX". Therefore, for purposes of clarity, the Court renumbers the Counts XI, XII and XIII in the order in which they appear.
3   In view of the fact that the individual Plaintiffs have the same surname (Love EL), to avoid confusion the Court will refer to them by their titles ("Sheik" and "Sheikess") or their first names ("Lyonel" and "Diana").
4   The submission of a Certified Statement of Conviction/Disposition does not require that this Court convert Defendants' motion to dismiss under F.R.C.P. 12(b)(6) into one for summary judgment. See Villegas v. Stachula, 2008 WL 5377801, at *1 n. 1 (N.D.Ill.Dec.19, 2008); Brown v. Campbell, 1995 WL 229033, at *3 n. 2 (N.D.Ill. April 14, 1995) (citing Venture Assoc. Corp. v. Zenith Data Systems, Inc., 987 F.2d 429, 431 (7th Cir.1993); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n. 3 (1st Cir.1991)); see also United States v. Wood, 925 F.2d 1580, 1582 (7th Cir.1991) (stating that court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment).
5   Rule 11 states that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—*or by a party personally if the party is unrepresented.*" Fed. R. Civ. Pro. 11(a) (emphasis added).
6   In dismissing Diana's claims without prejudice, the Court is not ruling on their merits at this time. Diana may refile her claims if she complies with the applicable rules. However, the Court notes that in the event that it had been able to consider her federal claims at this time, as currently pled those claims appear to suffer from the same defect as Lyonel's—namely, that the officers had probable cause for her arrest. Unless she can overcome that obstacle, her claims likely will be dismissed should she resubmit them.
7   Even if Plaintiffs sufficiently pled facts which demonstrated that Mayer Daley had any personal involvement in the alleged constitutional violations, Plaintiffs' claims still would fail because the complaint makes clear that the officers had probable cause to arrest Plaintiffs. See *infra* Part IV.
8   The only Defendants named and served in this lawsuit are the City of Chicago and Mayor Daley. Plaintiffs did not name or serve the individual officers to whom Plaintiffs refer throughout their complaint. Therefore, these officers are not proper

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 8

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0008

Defendants, and Plaintiff's only recourse against the City is by way of a *Monell* claim. However, as set forth below, in order to establish a *Monell* claim, Plaintiffs must demonstrate, through the facts alleged in their complaint, that their constitutional rights were violated. Although Plaintiffs have neither named or served the individual officers that they allege violated their rights, an analysis of the actions of the officers is appropriate at this time, both as relevant to the *Monell* claim and because Plaintiffs clearly intended to file suit against the individual officers even though they have failed to follow the procedural rules necessary to bring suit against the officers.

9    The Court notes that the Seventh Circuit has held that "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Dept.,* 588 F.3d 445, 456 (7th Cir.2009). In *Thomas,* the Seventh Circuit specifically addressed the holding in *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), and stated that to interpret the holding in *Heller* to constitute a "rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*" is "an unreasonable extension of *Heller."* 588 F.3d at 455. The Court in *Thomas* indicated that to evaluate potential *Monell* liability in the absence of individual liability, a court should consider "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.* at 456. The Court in *Thomas* noted that, in certain instances, a constitutional violation could solely be tied to an unconstitutional municipal policy if it could be shown that the public entity's "policies caused the harm, even if the officer was not individually culpable." *Id.* at 455. Thus, it is possible for there to be municipal liability even in the absence of underlying individual liability. See also *Bradley v. City of Chicago,* 2010 WL 432313, at *2 (N.D.Ill. Feb.3, 2010). In the present case, the relevant laws allow officers to arrest individuals who do not have license plates, valid drivers' licenses, or car insurance and who refuse to wear seat belts. To hold a municipality liable for training or allowing officers to arrest individuals for these offenses is simply not compatible with the state of the law in Illinois and would result in an inconsistent verdict.

---

**End of Document**            © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works.     9

Exhibit 4 - Moorish Nat. Republic: Federal Government Moorish Divine and National Movement of the World v. City of Chicago 0009