Case 2:19-cv-13588-NGE-DRG ECF No. 25-8, PageID.268 Filed 12/03/20 Page 1 of 4
People v. Kopp, Not Reported in N.W.2d (2002)
2002 WL 31058350

2002 WL 31058350
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee,
v.
Mark Alan KOPP, Defendant-Appellant.

No. 232165.
|
Sept. 13, 2002.

Before: MURPHY, P.J., and HOOD and MURRAY, JJ.

UNPUBLISHED

PER CURIAM.

 *1 Defendant was jointly tried with codefendant Joshua Rogers before separate juries. Each jury heard separate opening statements and closing arguments and only the statement to the police of the defendant whose case its was deciding. Defendant, Rogers and codefendant Chad Maleski, who was tried in another courtroom, were all convicted of felony murder, M.C.L. § 750.316(1)(b), unarmed robbery, M.C.L. § 750.530, carjacking, M.C.L. § 750.529a and kidnapping, M.C.L. § 750.349. A fourth codefendant, James Rivero, was jointly tried with Maleski but pleaded guilty at the close of the prosecutor's proofs to second-degree murder, unarmed robbery, carjacking and kidnapping. Defendant was sentenced to life in prison for murder and concurrent prison terms of 10 to 22½ years, 22½ to 35 years, and 25 to 40 years, respectively, for unarmed robbery, carjacking and kidnapping. Defendant appeals as of right. We affirm.

The evidence at trial indicated that defendant participated with Rogers, Maleski, and Rivero in the fatal beating, robbery, and carjacking perpetrated against the victim outside a bowling alley in the city of Grand Rapids. The victim, after being severely beaten, was stuffed into the trunk of his own car, and driven to a remote location in Mecosta County, where he was repeatedly stabbed with scissors and left to die. Trial testimony also indicated that while the victim was likely beaten into a helpless condition in the bowling alley parking lot, he survived even the stab wounds but died from blunt force injuries to his abdomen and head after several hours without medical attention. Defendant, Maleski and Rivero were apprehended the next morning after the police stopped the victim's car, that defendant was driving, for a traffic violation. The prosecutor also presented evidence that the DNA profile of the victim matched that of blood found in the trunk of the car, on clothes that defendant, Maleski and Rogers had been wearing, and on other items of evidence.

Defendant first argues that his trial counsel was ineffective because he failed to move to suppress the fruits of a search on the grounds that police illegally stopped and searched the victim's automobile. We disagree. Defendant failed to file a motion for new trial or otherwise create a record in the trial court regarding an ineffective assistance claim, *People v. Ginther,* 390 Mich. 436; 212 NW2d 922 (1973), and therefore appellate review is limited to the existing record, *People v. Sabin (On Second Remand),* 242 Mich.App 656, 659; 620 NW2d 19 (2000).

Defendant bears the burden of overcoming the strong presumption that his attorney was effective. *People v. Carbin,* 463 Mich. 590, 599-600; 623 NW2d 884 (2001). First, defendant must show that counsel's performance was deficient as measured against objective reasonableness under the circumstances according to prevailing professional norms, and second, the deficiency must have been so prejudicial that defendant was deprived of a fair trial. *People v. Pickens,* 446 Mich. 298, 303; 521 NW2d 797 (1994). This requires a defendant to show that there is a reasonable probability that but for counsel's unprofessional error(s) the trial outcome would have been different. *People v. Toma,* 462 Mich. 281, 302-303; 613 NW2d 694 (2000).

 *2 In the case at bar, defense counsel's performance was neither deficient nor was defendant prejudiced because the undisputed evidence at the motion to suppress defendant's statement established that the police had a lawful basis to stop the vehicle for a traffic violation. *People v. Davis,* 250 Mich.App 357, 363; ___ NW2d ___ (2002). "Trial counsel is not required to advocate a meritless position." *People v. Snider,* 239 Mich.App 393, 425; 608 NW2d 502 (2000).

At the suppression hearing, and at trial, Officer Dan Wells' testimony concerning the stop and arrest of defendant was undisputed. Wells testified that he was patrolling in Grand Rapids on March 16, 2000, and stopped a 1981 Cadillac, which had failed to signal a right turn. Wells identified defendant as the driver, who was arrested when he failed to produce a driver's license. This testimony established that Wells acted lawfully with probable cause to believe a Michigan traffic law violation had occurred, and he was therefore justified in stopping the vehicle. The motor vehicle code provides that it is a civil infraction to fail to signal a turn. MCL 257.648. Furthermore, the motor vehicle code provides that the police may stop and detain a person for "purposes of making a record of vehicle check," as well as writing a citation after observing a civil infraction. MCL 257.742(1). It is also a misdemeanor to drive a motor vehicle without a valid operator's or chauffeur's license, M.C.L. § 257.301; MCL 257.901, and it is a misdemeanor to fail to keep such license in one's immediate possession when driving or to fail to display a license upon demand of a police officer, M.C.L. § 257.311; MCL 257.901. When a stop of an automobile by the police is objectively lawful because probable cause exists to believe a traffic violation has occurred or reasonable suspicion that criminal activity is imminent, the subjective intent of the officers is irrelevant to the validity of a subsequent stop, arrest or search and seizure based on probable cause. Whren v. United States, 517 U.S. 806, 812-813; 116 S Ct 1769; 135 L.Ed.2d 89 (1996). Probable cause to believe defendant committed the traffic offense of failing to signal a turn justified the stop of defendant and subsequent arrest on a driver's license violation. People v. Haney, 192 Mich.App 207, 210-211; 480 NW2d 322 (1991).

Moreover, defendant lacks standing to challenge the search of the victim's Cadillac or to object to the police contact with the passengers in the car. Constitutional protections are personal and alleged invasions of the rights of others cannot be asserted vicariously. People v. Wood, 447 Mich. 80, 89; 523 NW2d 477 (1994); People v. Zahn, 234 Mich.App 438, 446; 594 NW2d 120 (1999). A person has standing to assert a constitutional violation if he had a reasonable expectation of privacy, in light of all the surrounding circumstances, in the area or object of the intrusion. People v. Smith, 420 Mich. 1, 27; 360 NW2d 841 (1984). However, the expectation of privacy must be legitimate, or one that society is prepared to recognize as reasonable. People v. Lombardo, 216 Mich.App 500, 504-505; 549 NW2d 596 (1996). In that regard, one in unlawful possession of a stolen automobile can hardly be said to have a legitimate expectation of privacy in stolen property operated on the public roadway that society is prepared to recognize as reasonable. Rakas v. Illinois, 439 U.S. 128, 141 n 9; 99 S.Ct. 421; 58 L.Ed.2d 387 (1978); Smith, supra at 28.

*3 Thus, defendant cannot establish an error of counsel that would probably have altered the outcome of his trial. As noted above, ineffective assistance does not occur when counsel declines to pursue futile motions.

Defendant next argues that the trial court erred by not suppressing his statements to the police because they were involuntary. Again, we disagree.

When considering a motion to suppress a statement, the trial court must determine, based on the totality of the circumstances, whether a defendant's statement was voluntary, and whether defendant made a voluntary, knowing, and intelligent waiver of his constitutional rights to silence and to counsel. People v. Cheatham, 453 Mich. 1, 27 (Boyle, J.), 44 (Weaver, J.); 551 NW2d 355 (1996); Snider, supra at 416. This Court must review the entire record de novo, but factual determinations of the trial court will not be set aside unless clearly erroneous. MCR 2.613(C); People v. Daoud, 462 Mich. 621, 629; 614 NW2d 152 (2000). A factual finding is clearly erroneous if the appellate court is left with a definite and firm conviction that a mistake has been made, giving due deference to the trial court's superior ability to determine credibility. People v. Sexton (After Remand), 461 Mich. 746, 752; 609 NW2d 822 (2000).

Before trial, defendant moved to suppress his statements to the police on the basis that they were not voluntary and that intoxication prevented a knowing and intelligent waiver of his rights according to Miranda v. Arizona, 384 U.S. 436, 478-479; 86 S Ct 1602; 16 L.Ed.2d 694 (1966). The trial court held a hearing required by People v. Walker (On Rehearing), 374 Mich. 331, 338; 132 NW2 87 (1965), at which the police and defendant testified.

Due process and the common law require that for the statement of the accused in a criminal trial to be admitted as evidence it must have been freely and voluntarily made. Daoud, supra at 630-631; Walker, supra at 333. A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," rather than one where the defendant's "will has been overborne and his capacity for self-determination critically impaired." People v. Cipriano, 431 Mich. 315, 334; 429 NW2d 781 (1988), quoting Culombe v. Connecticut, 367 U.S. 568, 602, 81 S Ct 1860, 6 L.Ed.2d

1037 (1961). A court must review all of the surrounding circumstances, with no single factor being determinative, including: the duration of the defendant's detention and questioning; the age, education, intelligence and experience of the defendant; whether there was unnecessary delay of arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency, to determine whether a statement is voluntary. *Sexton, supra* at 752-753.

Further, if the accused was in police custody, a statement of a defendant may not be used by the prosecutor as substantive evidence unless he demonstrates that, prior to any questioning, the accused was warned that he had a right to remain silent, that his statements could be used against him, and that he had the right to retained or appointed counsel. *Daoud, supra* at 633. The prosecutor also must prove by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his Fifth Amendment right against self-incrimination and to counsel before the defendant's statements during custodial interrogation may be admitted in evidence. *Id.* at 634. An objective standard is applied to determine the "totality of circumstances" involved, including the education, experience and conduct of the defendant, the credibility of the police, and whether a defendant's waiver of Fifth Amendment rights was voluntary, knowing and intelligent. *Id.* at 633-634. Furthermore, the analysis must be bifurcated: (1) whether the waiver was "voluntary," and (2) whether the waiver was "knowing" and "intelligent." *Id.* at 639.

*4 Whether a waiver is "voluntary" depends on the absence of police coercion, and in this case there was no evidence of police coercion. *Id.* at 635. Defendant's waiver was "knowing" and "intelligent" if defendant was aware of his available options, but he need not comprehend the ramifications of exercising or waiving his rights. *Id.* at 636.

In the present case, whether defendant was able to understand his available options as outlined in the *Miranda* warnings, or whether he was too intoxicated to comprehend his rights, was a question of fact that the trial court was required to resolve at the *Walker* hearing and which is accorded due deference on appeal *People v. Prast (On Rehearing),* 114 Mich.App 469, 484; 319 NW2d 627 (1982). The credibility of witnesses is the key factor in finding facts that are contested. In *Daoud, supra* at 629, our Supreme Court, quoting *Cheatham, supra* at 30, opined that "[c]redibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment." In *People v. Bender,* 208 Mich.App 221, 227; 527 NW2d 66 (1994), aff'd 452 Mich. 594 (1996), this Court noted that it will give "deference to the trial court's superior ability to judge the credibility of the witnesses, and will not reverse the trial court's factual findings unless they are clearly erroneous."

Here, the trial court found that although defendant had consumed drugs and alcohol before he was arrested, he was not intoxicated at the time he waived his rights, and he gave the police both an oral and a poorly spelled written statement. The trial court's factual finding was supported by evidence of lack of outward manifestation of intoxication observed by the police, intelligent responsive answers to police questioning during the interview itself, and by defendant exhibiting fine motor skills as demonstrated by his good penmanship in his statement. The trial court did not clearly err by finding that intoxication had not prevented defendant from knowingly and intelligently waiving his rights.

Further, the evidence supported the trial court's factual finding that defendant, in fact, knowingly and intelligently waived his rights. The testimony showed defendant had numerous prior contacts with the police and had been read the *Miranda* rights on nine prior occasions in juvenile court. The police testified that defendant was read the *Miranda* rights and defendant acknowledged he understood them; defendant also admitted that he was read his rights and did not dispute the testimony of the police. Defendant signed an "advice of rights" card that the police testified was part of defendant's nonverbal communication that he understood his rights and desired to waive them. Again, defendant did not dispute the testimony of the police. In short, the trial court's factual finding that defendant knowingly and intelligently waived his rights is not clearly erroneous.

*5 Moreover, an independent review of the totality of the circumstances does not create a definite and firm conviction that a mistake was made by the trial court finding that defendant's statements were voluntary. Although defendant was young, suffered from a learning disability, and had a low intelligence level, and he also had extensive experience dealing with the police and with the court system. The trial court, in the best fact-finding position, determined that defendant functioned in the low normal range and that at the time of his statement his cognitive abilities were not impaired by intoxicants. It was also undisputed that the police used no coercion, either through intimidation, threats, promises, or psychological tactics, to induce defendant to make a

statement. Further, the testimony of the police that defendant understood his rights and chose to waive them and give a statement was not contradicted. The totality of circumstances demonstrated that defendant's statements to the police were his "free and unconstrained choice," and therefore voluntary and admissible.

Next, defendant argues that DNA evidence was admitted at trial without a sufficient foundation that 310 Genetic Analyzer used by the state police was properly calibrated to produce accurate results and also that the prosecutor's expert testified to the statistical significance of the DNA evidence without showing the reliability of underlying data on which statistical analysis was based. We find it unnecessary to address the issue presented by defendant because there was overwhelming evidence, aside from the DNA evidence, establishing defendant's guilt beyond a reasonable doubt, and because defendant acknowledged that he was an active participant in the crime. This was not a case that hinged on DNA evidence. Even if the admission of the DNA evidence had been made in error, such error would have been harmless. MCL 769.26; *People v. Lukity,* 460 Mich. 484, 491-495; 596 NW2d 607 (1999).

Defendant's statement to the police, which was properly admitted into evidence as ruled above, and other evidence presented to the jury clearly supported the convictions. Moreover, in arguments presented to the jury, defense counsel stated that defendant had been involved in the crime, including hitting and stomping the victim and "cutting his wind." Defendant's position was simply that he lacked the requisite intent to commit the crimes.

In light of the evidence presented at trial and defendant's defense strategy, we fail to see how the DNA evidence had any meaningful significance in relation to the jury's verdict. There was no miscarriage of justice. *Lukity, supra* at 495.

Affirmed.

**All Citations**

Not Reported in N.W.2d, 2002 WL 31058350

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.